UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 5:22-cr-27-JA-PRL |
| Plaintiff, | **DEFENDANT'S SENTENCING MEMORANDUM** |
| v. | |
| ROBERT DEWAYNE LASHLEY, | |
| Defendant. | |

Defendant Robert Dewayne Lashley, through counsel, submits this sentencing memorandum.

## I.    Introduction

On October 4, 2022, pursuant to a plea agreement, Mr. Lashley pled guilty to one count of violating 18 U.S.C. § 249(a)(1).  Mr. Lashley has been in federal custody since June 17, 2022, when he was arrested in the Middle District of Georgia pursuant to the warrant issued in this case.  A sentencing hearing is scheduled for January 25, 2023.

## II.    Sentencing Guidelines Calculation

"As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark" when a district court is imposing a sentence.  *Peugh v. United States*, 569 U.S. 530, 536 (2013) (quoting *Gall v. United States*, 552 U.S. 38, 49 (2007)).  "The post-*Booker*

federal sentencing scheme aims to achieve uniformity by ensuring that sentencing decisions are anchored by the Guidelines . . . ." *Id*. at 541.

Mr. Lashley has no objection to the sentencing guidelines calculation in the PSR.  Doc. 82, ¶ 78.  The total offense level is therefore 13 and the criminal history category is I.  As a result, the advisory sentencing guidelines range is 12 to 18 months of incarceration, which falls within Zone C of the sentencing table.

## III.   Recommended Sentence

After considering the advisory sentencing guidelines, a district court must then consider "the arguments of the parties and the factors set forth in § 3553(a)."  *Peugh*, 569 U.S. at 536.  For the reasons below, the Court should impose a guidelines sentence of one year and one day in the Bureau of Prisons, with five months of that to be satisfied with a term of home detention.

### A.   History and Characteristics of Mr. Lashley

Robert Lashley was born on May 3, 1970 in Bartow, Florida.  He has one older brother, Roy Lamar Lashley, Jr., who is also his co-defendant in this case.  Mr. Lashley grew up poor but in a generally loving home.  He was mostly raised by his mother after his parents divorced when he was about 12 years old.  His father, who played in a band, was rarely home.

Mr. Lashley struggled academically from a very early age.  He repeated several grades and was ultimately placed in special education classes. After

2

continuing to struggle through the tenth grade, he was transferred to a vocational school. Mr. Lashley dropped out after taking courses in several areas, including automotive skills.

Mr. Lashley met his partner Karen Brosky when he was 19 years old. Mr. Lashley considers Ms. Brosky to be his wife even though they have never been legally married. They share four children and have been together for over 30 years. Mr. Lashley is extremely proud of his children, who all lead successful and productive lives. Mr. Lashley has always been involved in their lives and, more recently, the lives of his grandchildren. He considers himself a "home body," a family man, and someone who is willing to help people in need. His relatives and wife describe him the same way. *See* Ex. A.

The majority of Mr. Lashley's work career has been in auto body repair. He is highly skilled in that field and his work has been featured in industry publications. A few years ago, at the onset of the pandemic, Mr. Lashley began working as a long-distance truck driver. Mr. Lashley's wife also became a truck driver around the same time. Prior to Mr. Lashley's arrest, he and his wife would spend several weeks on the road before returning home for a few days of rest and to visit their children and grandchildren.

After he completes his sentence in this case, Mr. Lashley intends to live on a small piece of property he purchased with his wife near Tallahassee. They have a trailer on the property and Mr. Lashley had begun clearing it and

connecting it to utilities before his arrest in this case.  He intends to complete that work after his release from custody.  Mr. Lashley is unsure as to whether he will return to long-distance truck driving.  He has considered returning to auto body work and earning additional certifications in that field so he may spend more time at home.

### B.  Nature and Circumstances of the Offense

On November 17, 2021, Mr. Lashley went to visit his mother, father, and brother and have a family dinner.  In the early afternoon, Roy Lashley asked Mr. Lashley if he would ride with him to Dunnellon to go to the dollar store.  Roy Lashley drove Mr. Lashley to a Family Dollar.  Mr. Lashley entered the store and browsed the aisles for some beer.  A minute or two after Mr. Lashley entered the store, Daishawn Blunt entered the store.  Mr. Blunt looked around the store for a couple of minutes and left after he could not find what he wanted.  As he left, he opened the front door and walked away.  At the same time Mr. Blunt let go of the door, Roy Lashley walked up to the front door of the Family Dollar.  Roy Lashley muttered something and glared at Mr. Blunt as he walked away.  Roy Lashley then entered the store and waited to the side of the cash registers while Mr. Lashley purchased beer.

While paying for the beer, Roy Lashley began using numerous racial epithets to describe Mr. Blunt.  Roy Lashley also falsely told Mr. Lashley that Mr. Blunt closed the door on him and that they needed to retaliate against Mr.

Blunt.  Mr. Lashley then followed his brother out of the store and walked towards Mr. Blunt.  As he did so, Mr. Lashley shouted numerous profanities at Mr. Blunt, who did not turn around until Mr. Lashley was close to him.  Mr. Blunt, who felt threatened by Mr. Lashley's aggressive words and body language, admittedly swung at Mr. Lashley first.  The two then engaged in a fist fight for several minutes.  During the fight, witnesses heard Mr. Lashley use racial slurs.

At some point during the fight between Mr. Lashley and Mr. Blunt, Roy Lashley left the scene to get in his truck, move it to a different location, and retrieve an axe handle from inside.  Roy Lashley then returned to the fight, where Mr. Lashley and Mr. Blunt were still engaged with each other, and began to strike Mr. Blunt with the axe handle.  Mr. Lashley did not know (or intend) that Roy Lashley would use a weapon.

After numerous witnesses called 911, the police arrived.  The police had no issue taking Mr. Lashley, who was dazed from the fight, into custody.  Roy Lashley, however, continued to use racist language to describe Mr. Blunt.  In addition, Roy Lashley became aggressive with the police and attempted to kick out the legs of one of the arresting officers when they were handcuffing Mr. Lashley.  Roy Lashley remained uncooperative when a police officer had to use physical force to restrain him and put him in a police car after he refused to get in the car voluntarily.

5

### C.    Sincere Remorse

Mr. Lashley is ashamed of his actions in this case, as well as the actions of his brother.  Mr. Lashley has tried to raise his children by example, and it pains him to think about how his awful choices completely failed to live up to the values he taught them.  He has, and continues to, accept full responsibility for what he did.  He has also spent a lot of time reflecting on how and why he ended up in his current position, and what he can to do to right the harm he caused.  In connection with that, he has taken the time to write a letter to Mr. Blunt to express his remorse.  *See* Ex. B.  Additionally, on his own initiative, Mr. Lashley completed a 10-week anger management course at the Marion County Jail to try to gain some tools to ensure nothing like this ever happens again.  *See* Ex. C.

### D.    Need to Avoid Unwarranted Sentencing Disparity

From a sentencing standpoint, one of the most important features of this case are the differences between Mr. Lashley and Roy Lashley.  These differences include their personal backgrounds, characters, and roles in the offense.

As described above, Mr. Lashley is a family man who has worked his entire adult life.  He had some relatively minor legal issues and substance abuse problems as a younger man, but he has not used drugs in many years and has a good relationship with his wife and children.  He is independent and

has built a successful life for himself.  There is no evidence that Mr. Lashley previously targeted or spoke negatively of anyone because of their race, religion, sexuality, or other similar characteristic.

Roy Lashley, on the other hand, has no career and has lived with his parents and other family members for much of his adult life.  He has also used methamphetamine until the recent past (at least according to his 2019 conviction for possession of methamphetamine).  According to the discovery produced in this case, Roy Lashley's Facebook profile is riddled with political commentary containing negative racial connotations, including support for Confederate imagery and historical figures.

According to Mr. Lashley's wife, Roy Lashley has been a negative influence on Mr. Lashley for many years.  Mr. Lashley's parents have pushed Roy Lashley on him to try to make up for his character failings.  Mr. Lashley, in turn, feels he needs to accommodate his brother to please him and his parents.  As a result, Mr. Lashley has made some poor choices, including what happened in this case.  Although Mr. Blunt's race was clearly a factor in this case, it was not the only factor.  Mr. Lashley acted, still wrongfully, on his brother's false statement that Mr. Blunt intentionally closed a door on him, and that Mr. Lashley needed to retaliate.  Prior to hearing from his brother, there is no indication Mr. Lashley was agitated or even noticed Mr. Blunt.  This is evidenced in the statement of one of the Family Dollar store clerks who

witnessed part of the incident.  They described Mr. Lashley as "nice" until Roy Lashley entered the store.  At that point, they saw Mr. Lashley's demeanor change to "snappy."

There is no doubt that Roy Lashley instigated this offense.  He fed Mr. Lashley a lie, worked him up with racist language, and used their emotional bond to goad Mr. Lashley into pursuing and fighting someone who had done absolutely nothing wrong.  Up to the moment in the Marion County Jail when Mr. Lashley first saw surveillance video from the Family Dollar store, he sincerely believed his brother's narrative: that Mr. Blunt deliberately pushed a door on Roy Lashley.  After Mr. Lashley saw the surveillance video produced in discovery, his facial expressions showed the betrayal and anger he later verbally expressed.  He immediately saw Mr. Blunt had done nothing wrong, that is brother lied to him, and that his actions were without any justification.

The Court must sentence Mr. Lashley with a far lighter hand than Roy Lashley.  It would be nothing short of a tragedy to view their conduct as remotely similar in this case.

## IV.   Conclusion

Based on the above, including Mr. Lashley's history and characteristics, the nature and circumstances of the offense, his sincere remorse, and the need to avoid an unwarranted sentencing disparity, the Court should impose a guidelines sentence of imprisonment of one year and one day.  The Court

should also order that five months of that sentence may be satisfied with a term of home detention.  That is the sentence that is "sufficient, but not greater than necessary" to further the purposes of federal sentencing.   18 U.S.C. § 3553(a).

Dated this 17th day of January, 2023.

Respectfully submitted,

A. Fitzgerald Hall, Esq.
Federal Defender

/s/ Douglas J. Stamm
Douglas J. Stamm, Esq.
Florida Bar No. 0092069
Assistant Federal Defender
400 N. Tampa St., Suite 2700
Tampa, FL 33602
Telephone: (813) 228-2715
Fax: (813) 228-2562
E-mail: douglas_stamm@fd.org

Attorney for Robert Lashley

## <u>CERTIFICATE OF SERVICE</u>

I certify that on January 17, 2023, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send notice of electronic filing to all counsel of record.

/s/ Douglas J. Stamm
Assistant Federal Defender